

# NUMBER 13-12-00344-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANCISCO DURAN, JR.,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

---

### On appeal from the 445th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

In five issues, which we have reordered, appellant, Francisco Duran, challenges his conviction for burglary of a habitation, a first-degree felony. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). We affirm as modified.

## I. BACKGROUND

The State indicted appellant for burglary of a habitation with the underlying felony of aggravated assault (Count I) and a separate charge of aggravated assault with a deadly weapon (Count II). *See id.* §§ 30.02(a)(3), 22.02(a)(2) (West 2011). The aggravated assault charge contained in Count II was identical to the underlying felony alleged in the burglary charge.

Gonzalo Gonzalez testified that he was watching movies in his apartment with Juan Luna when he heard a group of individuals coming down the alleyway, talking loudly. Gonzalez and Luna both exited Gonzalez's apartment to investigate. Gonzalez testified that there were six individuals in the group: three juvenile males, two adult males, and one adult female. Gonzalez identified appellant as one of the adults in the group.

One of the other adults accused Luna of having thrown something[1] through the window of the house where the group had been barbecuing and then fleeing back into Gonzalez's apartment. The group began to crowd around Luna, and Gonzalez intervened to protect him.[2] The group responded by accusing Gonzalez of being the one who broke the window. Gonzalez testified that he instructed the group to leave his property but appellant "ran into [his] house . . . to search for whoever had broken the window." Gonzalez testified that he followed appellant into his house. The other adults followed Gonzalez, but the juveniles remained outside. Gonzalez testified that he grabbed appellant by the arm and attempted to pull him out of the house, at which time

---

[1] There was conflicting testimony about whether a brick or a rock was used to break the window.

[2] Luna is hearing impaired and was unable to understand what the group was saying.

2

the other adult male in the group punched Gonzalez on the side of the head. Gonzalez testified that he fell to the floor as a result of the punch, and both appellant and the other adult male hit him. Gonzalez further testified that after he fell to the floor, appellant and the other adult male threw Gonzalez's Xbox game console, a "Wii Player," and a DVD player at him.[3] The Wii and the DVD player struck Gonzalez's back. Because Gonzalez was on the floor facing downward he could not tell which of the two actually threw the DVD player. Gonzalez testified that at that point he got up, ran out of his apartment, and encountered police that were arriving to investigate the broken window. Appellant and the rest of the group returned through the alley to their house, where they had been barbecuing. Gonzalez testified that he suffered a laceration on his back and pain from his injuries.

Appellant's acquaintance Martin Perez testified that he picked up appellant from the house with the broken window. Perez testified that appellant was laughing and joking about the incident with the other people there. According to Perez, appellant stated that he and a group of other males went down the alley to another residence, entered the residence, and "got into an altercation" with someone in the residence. Police later arrested both Perez and appellant. The State originally indicted Perez for playing a role in the assault, but later dismissed the charges. Perez did not testify pursuant to an agreement with the State.[4]

---

[3] Gonzalez also testified that appellant and the other male also tried to throw Gonzalez's TV but did not remove the cord from the wall first.

[4] On cross-examination, Perez testified that he was unsure of whether the indictment was still pending against him, although it appears from the nature of the questions of appellant's attorney that it had already been dismissed.

3

Chevon Muniz, who was present at the barbeque at the time the window was broken, testified for the defense. She agreed that a group of men left to pursue the person who broke the window, but testified that appellant was not one of them. Muniz confirmed that appellant remained at the barbeque with her.

The jury returned a verdict of guilty on both counts. The State voluntarily vacated Count II, aggravated assault with a deadly weapon, before the sentencing phase out of concern that imposing punishment for it would violate appellant's double jeopardy protection against receiving two punishments for the same offense. *See Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The jury found the enhancement paragraph of a prior felony to be true, and assessed twenty-five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. The State later filed a motion to modify the judgment to enter an affirmative deadly weapon finding. The trial court granted the motion over appellant's objection and rendered a modified judgment that reflected an affirmative deadly weapon finding. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence supporting his conviction for burglary of a habitation with the underlying offense of aggravated assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(3).

#### 1. Standard of Review

In evaluating the sufficiency of the evidence supporting a conviction, we view all the evidence in a light most favorable to the verdict and ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable

4

doubt." *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact, in this case the jury, is the sole judge of the credibility of witnesses and the weight, if any, to be given to their testimony. *Id.*; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op). "The reviewing court must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19 (1979)). The State may prove the elements of an offense by either direct or circumstantial evidence. *Id.* In a sufficiency review, "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia*, 367 S.W.3d at 687; *see Brooks*, 323 S.W.3d at 899 n.13.

### 2. Applicable Law

We measure the sufficiency of the evidence supporting a conviction "by the elements of the offense as defined by the hypothetically correct jury charge for the case" applied to the particular facts of the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In this case, the State had to prove that appellant: (1) intentionally or knowingly; (2) entered a habitation; (3) without the owner's effective consent; (4) and

while there committed or attempted to commit aggravated assault.  *See* Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 30.02(a)(3).

A person commits the crime of assault if he (1) intentionally, knowingly, or recklessly, (2) causes bodily injury to another.  *Id.* § 22.01(a)(1).  The penal code defines "bodily injury" as "physical pain, illness or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2011).  Bodily injury is "proven by evidence that the victim suffered 'some' pain."  *In re. I.L.*, 389 S.W.3d 445, 455 n.7 (Tex. App.—El Paso 2012, no pet.).  "A person commits the felony offense of aggravated assault if he commits assault and (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault."  *Mitchell v. State*, 137 S.W.3d 842, 845 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see* Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 22.02(a)(2).  A deadly weapon is *"*anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 1.07(a)(17)(B).  The court of criminal appeals has interpreted this language to mean that it is not necessary for the State to show that a defendant intended to cause death or serious bodily injury, only that appellant intended to use the object in a way that it could cause death or serious bodily injury.  *McCain v. State,* 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *see also Bailey v. State,* 46 S.W.3d 487, 490–91 (Tex. App.—Corpus Christi 2001, no pet.) (op. on remand).  *"*In determining whether an object is a deadly weapon, the jury may consider all the surrounding facts."  *Quincy v. State,* 304 S.W.3d 489, 500 (Tex. App.—Amarillo 2009, no pet.).

In brief, the State was required to prove that appellant entered Gonzalez's apartment without his permission and, while there, committed assault, which became

6

aggravated by appellant using the DVD player in a way that it could cause death or serious bodily injury.

### 3. Analysis

Appellant argues that "the evidence does not show the commission, or even the attempt to commit aggravated assault with a deadly weapon." Specifically, appellant argues that the DVD player was "was merely thrown and not used to hit the victim." We interpret appellant as arguing that the evidence does not show that appellant used the DVD player as a deadly weapon.[5] Gonzalez testified that appellant and the other adult male in the group threw an Xbox game console, a "Wii player," and a DVD player at appellant's back and that he suffered lacerations there as a result. Gonzalez further testified that he was still suffering pain from the impact of the DVD player at the time of the trial, which was held sixteen months after the incident. We conclude from this that the State produced sufficient evidence to demonstrate that appellant suffered bodily injury as a result of appellant's conduct.

As discussed above, the State produced testimony that appellant and the other male in the group threw several objects at Gonzalez, including the DVD player, and that the DVD player struck Gonzalez's back. The DVD player itself was also admitted into evidence for the jury's inspection. Raynel Salinas, a Gang Investigator for the City of Harlingen Police Department, testified that he thought the DVD player was a deadly weapon because it could cause serious injury if it was thrown at a person, as it was in this case. Other courts of appeals have concluded that objects thrown at a person can qualify as a deadly weapon. *See, e.g., Landrian v. State,* 263 S.W.3d 332, 336 (Tex.

---

[5] The "Wii Player" was also used to hit the victim, but the State argued at trial that the DVD player constituted the deadly weapon, and the judgment of conviction so reflects.

7

App.—Houston [1st Dist.] 2007), *rev'd on other grounds,* 268 S.W.3d 532, 540–42 (Tex Crim. App. 2008) (a broken bottle); *see also Marin v. State*, No. 08-00-344-CR, 2002 WL 1874815, at *3 (Tex. App.—El Paso Aug. 15, 2002, no pet.) (mem. op.) (not designated for publication) (a "water meter cover" and glass bottle); *Narcisee v. State,* No. 14-96-97-CR, 1998 WL 767662, at *4 (Tex. App.—Houston [1st Dist.] Nov. 5, 1998, no pet.) (mem. op., not designated for publication) (a basketball).

Although appellant argues that the DVD player was not used to hit the victim, the jury heard testimony that appellant threw the DVD player at Gonzalez and struck Gonzalez with it. It is the role of the jury to resolve conflicts in the evidence, and we must defer to that resolution. *Garcia,* 367 S.W.3d at 687; *see Brooks,* 323 S.W.3d at 899 n.13. In sum, we hold that a rational jury could have concluded that by throwing the DVD player at Gonzalez, appellant used the DVD player in a manner in which it was capable of causing serious injury or death.[6] See *Landrian*, 263 S.W.3d at 336.

Accordingly, appellant's first issue is overruled.

### B. Modification

In his second issue, appellant complains that the trial court erred in rendering a judgment that included Count II, the aggravated assault charge. The record reflects that at the beginning of the punishment phase, the State's attorney rose and announced: "at this time the State is abandoning the second charge of aggravated assault with a deadly weapon due to the fact that the Defendant cannot be punished on both charges. It is double jeopardy, so we are going forward solely on the burglary of a habitation

---

[6] Appellant argues, correctly, that Gonzalez was facing downward when the DVD player hit him and testified that he was unable to see who threw it. Our analysis still applies because the jury charge in this case allowed the jury to convict appellant for aggravated assault either as the primary actor or as a party to it. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

8

[charge]." In its brief, the State does not oppose appellant's request, but instead responds that it "may be appropriate to modify the trial court's judgment by removing the Aggravated Assault conviction" but asks that we preserve the deadly weapon finding, an issue we address below.

This Court has the authority to modify the record to make it speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). It is unnecessary to completely delete Count II from the judgment because appellant was, in fact, convicted of it. We conclude that the judgment should be modified to reflect that the State abandoned Count II before the punishment phase and to affirmatively state that punishment was assessed only on Count I. *See Gibson v. State*, No. 06-07-200-CR, 2008 WL 2596221, at *5 (Tex. App.—Texarkana July 2, 2008, pet. ref'd) (mem. op., not designated for publication) ("Accordingly, the trial court was correct in accepting the jury's verdict for burglary and ignoring or dismissing its conviction for aggravated assault.")

Appellant's second issue is otherwise overruled.

## C. Deadly Weapon Finding

In his third issue, appellant complains that the trial court erred in modifying the judgment to include a deadly weapon finding because: (1) the State failed to provide adequate notice that it would seek an affirmative deadly weapon finding; (2) the jury's verdict does not support the trial court's entry of an affirmative deadly weapon finding; and (3) the modified judgment incorrectly states that the deadly weapon finding was made by the jury pursuant to a special issue.

9

### 1. Applicable Law

"[E]ligibility for parole [is] affected by the inclusion in the convicting court's judgment of an affirmative finding that [the defendant] used a deadly weapon." *Blount v. State*, 257 S.W.3d 712, 713 (Tex. Crim. App. 2008); *see* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West. Supp. 2011). A defendant is generally "entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution." *Grettenberg v. State*, 790 S.W.2d 613, 614–15 (Tex. Crim. App. 1990) (citing *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989)). This notice need only be provided to the defendant in some form. *Id.*; *see Brooks v. State*, 847 S.W.2d 247, 248–49 (Tex. Crim. App. 1990) (a completely separate indictment arising out the same facts provides adequate notice). "Aggravated assault may be committed in only two ways[,] . . . each involv[ing] the use of a deadly weapon." *Blount*, 257 S.W.3d at 714. Therefore, "an allegation that the defendant committed or attempted to commit aggravated assault [is] adequate notice that there would be an issue of [the defendant's] exhibition or use of a deadly weapon since each manner of committing aggravated assault involves the use of a deadly weapon." *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009). Furthermore, the State may seek an affirmative deadly weapon finding when, as in this case, an "indictment allege[s] a burglary of a habitation in which, after entering, the appellant committed [or] attempted to commit a felony of aggravated assault." *Blount*, 257 S.W.3d at 714. In such a case, "the jury's verdict [is] an adequate basis for the trial court's entry of the affirmative finding in the judgment under the statutes which require such findings." *Crumpton*, 301 S.W.3d at 665.

### 2. Analysis

10

In this case, the indictment's allegation that appellant committed aggravated assault gave appellant adequate notice that the State may have sought an affirmative deadly weapon finding. *See id.* at 664. Furthermore, we conclude that the jury's verdict that appellant was guilty as charged of burglary of a habitation with the underlying offense of aggravated assault "affirmatively supports the trial court's judgment that a deadly weapon was used." *Id.* at 665. Therefore, the trial court did not err by including the finding in its judgment. *See id.* ("[If] the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was used.").

Finally, although we agree with appellant that the court did not submit a special issue to the jury, "[t]he State may be able to obtain a deadly-weapon finding from the jury at the guilt phase of trial either through the wording of the offense submission in the jury charge or through a special issue." *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012). We conclude that the judgment should be modified to delete the words "Special Issue" and to reflect that the deadly weapon finding was entered because of the jury's verdict that appellant was guilty as charged in the indictment.

Appellant's third issue is overruled in all other respects.[7]

**D. Ineffective Assistance of Counsel**

In his fourth issue, appellant argues that he received ineffective assistance of counsel at trial as a result of a series of errors.

---

[7] Appellant also includes language in his brief that reargues the sufficiency of the evidence supporting the deadly weapon finding. We have already considered that argument above in appellant's first issue and need not repeat our reasoning here. *See* TEX. R. APP. P. 47.1, 47.4.

### 1.  Applicable Law

In order to prevail on a claim of ineffective assistance of counsel, an appellant must meet the heavy burden of *Strickland v. Washington*,  466 U.S. 668 (1984); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.).   Under *Strickland*, the defendant must show by preponderance of evidence that:  (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance.  *Strickland*, 466 U.S. at 687; *Jaynes*, 216 S.W.3d at 851.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007).   If an appellant fails to prove one prong of the test, we need not reach the other prong.  *See Strickland*, 466 U.S. at 697; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We look to "the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel."  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Although "a single egregious error of omission or commission" can constitute ineffective assistance, the court of criminal appeals has been hesitant to designate a particular error as per se ineffective assistance.  *Id.*  "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Id.*  Allegations of ineffectiveness must be "firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."  *Id.*  Direct appeal is therefore usually inadequate to make an ineffectiveness claim because the record is often undeveloped.  *Goodspeed v. State*, 187 S.W.3d 390, 392

(Tex. Crim. App. 2005). This is especially true "where counsel's reasons for failing to do something do not appear in the record." *Id.* The court of criminal appeals has explained that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Unless counsel had an opportunity to explain his trial strategy, Texas appellate courts will "not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (citing *Garcia v. State*, 57 S.W.3d 426, 440 (Tex. Crim. App. 2001)).

### 2. Analysis

Appellant argues that a number of single errors constitute ineffective assistance of counsel, and even if any of these errors do not suffice, counsel's performance as a whole compels a finding of ineffective assistance. Appellant complains of the following alleged errors by his trial counsel: (1) that counsel did not appear when ordered to by the court and had a writ of attachment issued for him; (2) once trial counsel appeared at jury selection, he performed "a very limited voir dire" and did not discuss important matters such as the defendant's possible election not to testify, the indictment, and the elements of the charged offense; (3) counsel's cross-examination of the State's witnesses was "rambling and not coherent," resulting in multiple admonishments from the trial judge; (4) counsel did not conduct an independent investigation and only moved for discovery the Friday before the Monday on which trial was scheduled to start; (5) counsel did not request a jury instruction on lesser-included offenses; and (6) he did not request a jury instruction on testimony of a jailhouse informant pursuant to article

38.075(a) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.075(a) (West Supp. 2011).

The record is silent as to trial counsel's strategy, and we may not speculate as to his intentions. His decision not to request a jury instruction on the lesser-included offenses could have been part of an "all-or-nothing trial strategy." *Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004). There is no evidence indicating whether or not counsel conducted an independent investigation. Appellant faults trial counsel for not filing a motion for discovery until the trial had almost started, but appellant has not indentified any prejudice that he suffered. *See Strickland*, 466 U.S. at 697; *Garcia*, 57 S.W.3d at 440; *see also Hammond v. State*, 942 S.W.2d 703, 710 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (concluding that complete failure to file pretrial motions does not constitute ineffective assistance of counsel unless the defendant identifies prejudice that he suffered as a result). In any case, without a fuller record detailing trial counsel's strategy, appellant's claim of ineffective assistance fails as to these issues. *See Goodspeed*, 187 S.W.3d at 392; *Rylander*, 101 S.W.3d at 111.

Appellant also argues that trial counsel was ineffective for conducting a brief voir dire, but "a brief voire dire need not be equated with ineffectiveness of counsel." *Hollis v. State*, 219 S.W.3d 446, 463 (Tex. App.—Austin 2007, no pet.). The record reflects that trial counsel actually used all of the time he was given by the trial court for voir dire. During that time, he questioned the panel members regarding whether they understood the State's burden to prove his client's guilt beyond a reasonable doubt despite their own personal feelings, and questioned specific members with personal ties to law

14

enforcement whether they could impartially consider police testimony. We hold that appellant's ineffective assistance of counsel issue fails as to this claim.

Appellant next argues that trial counsel erred by failing to request a jury instruction under article 38.075(a) of the code of criminal procedure regarding Perez's testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.075(a). Article 38.075(a) provides that:

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

*Id.*

However, Perez testified to incriminating statements appellant made before they were even arrested. Therefore, article 38.075(a) was inapplicable. Accordingly, we hold that appellant's ineffective assistance of counsel issue fails as to this claim.

Appellant next argues that trial counsel's representation was deficient because he had not seen a video that the State showed to the jury during the punishment phase before the State moved to admit it. The video apparently consisted of a compilation of recordings of numerous incidents of jailhouse misconduct by appellant during the trial. Although trial counsel stated that he had not seen the video, he made several proper objections before the court admitted it. Therefore, even assuming that not viewing the video was error, appellant has not established how he suffered prejudice as a result of it. We hold that appellant's ineffective assistance claim fails as to this issue.

Finally, appellant argues that his counsel was ineffective because his cross-examination of the State's witnesses was "rambling and not coherent." Counsel's

15

questions specifically challenged Gonzalez's identification of appellant, the extent of Gonzalez's bodily injury because he refused transportation to a hospital at the time of the offense, and whether the DVD player and other electronic equipment used in the assault qualified as deadly weapons. Counsel also asked questions of Perez that highlighted the possibility that he was being less than truthful because the State previously indicted him in connection with this burglary. Admittedly, counsel refused to move on once the trial judge ruled that counsel's questions had been asked and answered at several points during the trial. The record nevertheless shows that counsel's cross-examination effectively challenged the testimony of the State's witnesses and was far from "rambling and incoherent." Accordingly, we hold that appellant's ineffective assistance claims fails as to this issue.[8]

We overrule appellant's fourth issue.

### E. Exclusion of Defense Witnesses

In his fifth issue, appellant argues that the trial court committed error by excluding two witnesses appellant wished to call to testify during the punishment phase of the trial for violation of the witness sequestration rule.

#### 1. Standard of Review and Applicable Law

When invoked by either party or the court, Texas Rule of Evidence 614 ("the Rule") requires, with some exceptions, that witnesses be excluded from the courtroom during trial so that they are unable to hear the testimony of other witnesses. TEX. R. EVID. 614; *see Longoria v. State*, 148 S.W.3d 657, 660 (Tex. App.—Houston [14th Dist.]

---

[8] Appellant also complains that when trial counsel did not appear on the morning of jury selection, the trial court issued a writ of attachment for him. Although this behavior certainly qualifies as a mistake, appellant does not allege how he suffered prejudice from it. Furthermore, no prejudice is apparent from the record, especially because trial counsel appeared later that day, the court recalled the writ, and jury selection proceeded.

16

pet. ref'd).  In excluding a defense witness from testifying for violation of Rule 614, a trial court should take into account the defendant's constitutional right to call witnesses on his behalf and have them testify.  *Longoria*, 148 S.W.3d at 660.  "[G]enerally, witnesses should not be excluded [from testifying] solely for violation of the rule."  *Id.*  The court of criminal appeals has announced a two-part inquiry for determining whether a trial court abused its discretion in excluding a defense witness for violation of Rule 614:

> (1) were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense.

*Webb v. State*, 776 S.W.2d 236, 245 (Tex. Crim. App. 1989); *see Longoria*, 148 S.W.3d at 660.

### 2. Analysis

Appellant admits that both excluded witnesses were present during the guilt-innocence stage of the trial, but he argues that neither of them were going to testify regarding the facts of case.  At trial, appellant's counsel also argued that the two witnesses were only going to testify as to "background and family issues."  Appellant did not explain the content of the testimony further, and it is unclear if he made a sufficient offer of proof to preserve this issue for review.  "It is appellant's burden to make a record, through a bill of exceptions, of the evidence he or she desires admitted."  *Montgomery v. State*, 383 S.W.3d 722, 726 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Assuming without deciding that appellant made a sufficient offer of proof at the trial court level, he does not explain on appeal how the testimony of the excluded witnesses would have differed from that offered by Ashley Gasca, whom the trial court

17

permitted to testify for appellant during the punishment stage. Gasca testified that appellant was a positive role model for her and greatly assisted Gasca and her mother and sister once appellant came to live with them after his parents died. Appellant's two excluded witnesses were Gasca's mother, Dolores Trevino, and Crystal Gasca, whom we infer from the record to be Ashley Gasca's sister. Appellant does not explain how their testimony would have differed from Ashley's or how it would have been crucial to his case. Because appellant has not demonstrated that he meets the second prong of the *Webb* test, and is therefore unable to show he suffered prejudice from the exclusion, we conclude that the trial court did not abuse its discretion in refusing to permit Trevino and Crystal Gasca to testify. *See Delapaz v. State*, 229 S.W.3d 795, 802 (Tex. App.—Eastland 2007), *rev'd on other grounds*, 273 S.W.3d 671, 681 (Tex. Crim. App. 2008)) (testimony of excluded defense witness was not crucial when the witness' testimony would have been cumulative of other testimony that had already been received). Appellant's final issue is overruled.

### F. State's Requested Modification

The State also requests that we modify the judgment to reflect that appellant was convicted of a first-degree felony. The judgment states that appellant was convicted of a second-degree felony. Burglary of a habitation is a first-degree felony if the premises entered is a habitation and the defendant commits or attempts to commit an offense other than felony theft while there. TEX. PENAL CODE ANN. § 30.02(d)(1)–(2). The facts of this case fulfill both of these requirements. Accordingly, we grant the State's request and modify the judgment to reflect that appellant was convicted of a first-degree felony. *See* TEX. R. APP. P. 43.2(b); *French*, 830 S.W.2d at 609.

18

### III. CONCLUSION

We modify the judgment to delete the words "Special Issue" in the deadly weapon finding, to reflect that the State abandoned Count II before the punishment phase and to reflect that punishment was assessed only on Count I, and to reflect that appellant was convicted of a first-degree felony.  We affirm the judgment as modified.

                                          __/s/ Nora L. Longoria_____
                                          NORA L. LONGORIA
                                          Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of July, 2013.