**Opinion issued July 16, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-12-00595-CR, 01-12-00596-CR

————————————

## MICHAEL WILLIAM BOCK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Case Nos. 11CR0401, 11CR0402

---

### MEMORANDUM OPINION

Appellant Michael William Bock was convicted by a jury of two counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (C) (West 2011). Bock was sentenced to two years' imprisonment on the first count, and four years' imprisonment on the second count, which was suspended. On appeal, Bock

challenges the sufficiency of the evidence to support his convictions and contends that his trial counsel was ineffective. We affirm.

## Background

Bock was charged and convicted of two counts of sexual assault of E.C, a close friend of Bock's step-daughter, Rayanne. During the summer of 2010, E.C. was fourteen years old and spent several nights a week at Bock's house. She testified that she was close to Bock and thought of him as a father figure.

E.C. testified that the first sexual assault occurred one night in July after Bock had taken her and Rayanne to a bar. She testified that after they returned home, she and Bock stayed up to watch television while Rayanne went to bed. After about thirty minutes of watching television, Bock came over to her and got on top of her. When she asked him what he was doing, Bock told her to be quiet and then he started taking off their clothes. She told him to stop and that she did not want to do this, but he told her it was okay. She testified that he then put his penis inside her vagina and began to have sex with her, but eventually stopped after she started crying. E.C. testified that Bock continued to have sex with her several times over the course of the summer and into the fall.

E.C. also testified that on one occasion, Bock put his mouth on her vagina. She testified that she was lying in a bed at Bock's house, and he took off her pants, put his head in her crotch, and placed his mouth on her vagina. When she asked

2

him what he was doing and told him to stop, he told her to stay still. She testified that this was the first time that someone had performed oral sex on her and that it was awkward, uncomfortable, and embarrassing.

E.C. testified that the last time Bock sexually assaulted her was in October 2010, when she, Bock, Rayanne, Bock's son Jeremy, and Rayanne's cousin Lyle were on a trip to attend a wedding at the Frio River.[1] She testified that Bock decided that they would share a room at the cabin. After the wedding, Bock, E.C., Rayanne, and Lyle started drinking. Shortly after Rayanne fell asleep in a chair on the porch, E.C. went to her room. E.C. testified that Bock came into her room and she told him to go away. Bock told her no, got on top of her, started taking her clothes off, and then started having sex with her.

After the Frio River trip, in November 2010, E.C. told her mother that Bock had been sexually assaulting her. She took E.C. to a health care professional the next day, and called the Galveston County Sheriff's Department. She then took E.C. to the Child Advocacy Center where E.C. was interviewed by a forensic interviewer and given a physical examination.

At trial, the State presented testimony from various persons involved with the investigation. Lieutenant Gary Echols, with the Galveston County Sheriff's Department, testified that he was the on-call detective at the time the department

---

[1] Bock was not charged with the sexual assault that occurred on the Frio River trip.

3

received the call concerning the sexual assault of E.C. He testified that upon receiving the call, he set up an appointment with the Child Advocacy Center, and then took statements from various witnesses. Based on the interviews with witnesses, Lieutenant Echols determined that the sexual assaults occurred at Bock's house. He testified that he did not get a search warrant for Bock's house and did not collect any DNA because of the amount of time that had lapsed between the first sexual assault and the time it was reported.

Rayanne's cousin Lyle also testified that he attended the wedding at the Frio River and stayed at the cabin. He testified that he slept in one bedroom, Jeremy slept in another, Rayanne fell asleep outside, and Bock and E.C. slept in the other bedroom together. He testified that he thought it was odd that Bock would share a bedroom with E.C. rather than one of his own children.

Dr. Ralph Noble, a pediatrician who specializes in child abuse pediatrics, testified that there were no signs of trauma found during E.C.'s physical examination and that her hymen was intact. However, he testified that, in E.C.'s case, this was still consistent with a diagnosis of sexual abuse based on her statements and history. He testified that in most sexual abuse cases, there will be no physical signs of sexual abuse and no abnormalities with the hymen due to the lapse of time between when the abuse occurred and when the child is examined.

He also testified that the fact that the hymen is intact does not necessarily mean there was no abuse because that part of the body heals very rapidly.

Angela Attaway, a nurse practitioner, testified that she interviewed E.C. to get a history of the assault and performed a physical examination of her. She testified that E.C. told her Bock sexually assaulted her, by placing his penis inside her vagina, at least six times; that Bock told her "I know you want it"; that E.C. told her mom what happened because she decided that would be best; and that the assaults happened in her room at Bock's house while everyone else was sleeping. Attaway also testified that when she asked E.C. if Bock wore a condom, E.C. told her no because he has had a vasectomy.

Bock testified in his own defense and stated that he did not sexually assault E.C. He testified that he allowed E.C. to spend so much time at his house because she was one of his daughter's best friends and she seemed like she needed help. He testified that E.C. would come to him with questions about life, boyfriends, and her parents and that he felt like a father figure to her. He also testified that he was concerned about E.C.'s drug use and that he tried to help her work through it. He testified that after the trip to the Frio River, he no longer wanted E.C. around because she had offered drugs to his daughter, Rayanne. He also admitted that he had allowed Rayanne and E.C. to drink on occasion, and that he now knows that was a bad idea. Bock denied sleeping in the same room as E.C. at the cabin. He

5

testified that E.C. knew he had a vasectomy because Rayanne, Jeremy, and E.C. were talking about sex one day and asked him whether he was "cut."

After hearing all of the evidence, the jury found Bock guilty of both counts of sexual assault of a child. Bock appealed.

## Sufficiency of the Evidence

In his first point of error, Bock argues that the evidence is insufficient to support his convictions for sexual assault of a child. Bock does not attack the sufficiency of the evidence to support any specific element of the offense; rather, his complaint on appeal is essentially a challenge to E.C.'s credibility. He contends that evidence conclusively established a reasonable doubt, and that, "[d]espite the undisputed evidence of drug usage, alcohol abuse and usage, a reputation for lying, and general improbability of the alleged events," the jury "ignored all reasonable (if not even compelling) doubts as to the young girl's lack of credibility" and convicted based on her statement alone. Bock argues that no other evidence, direct or circumstantial, supported the jury's verdict. The State responds that the child victim's testimony alone is sufficient to support Bock's convictions and that it was up to the jury to weigh and consider the credibility of the witnesses.

## A.  Standard of Review

An appellate court reviews legal and factual sufficiency challenges using the same standard of review.  *See Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011).  "Under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt."  *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).  Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged.  *Gonzalez*, 337 S.W.3d at 479.  The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  If an appellate court

finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479.

An appellate court determines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). "An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence." *Gonzalez*, 337 S.W.3d at 479. A court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13).

**B.    Applicable Law**

Bock was convicted of two counts of sexual assault of a child. To prove that Bock committed a sexual assault of a child in the first count, the State was required to establish that Bock intentionally or knowingly caused the penetration of the

8

sexual organ of a child,[2] in this case E.C., by any means. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West 2005). To prove the second count of sexual assault of a child, the State was required to establish that Bock intentionally or knowingly caused the sexual organ of E.C. to contact the mouth of another person, Bock. *Id.* § 22.011(a)(2)(C).

A conviction of sexual assault of a child is "supportable on the uncorroborated testimony of the victim of the sexual offense." TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *see also Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The victim is not required to inform another person of the alleged offense if at the time of the alleged offense the victim was seventeen years of age or younger. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1). The State has no burden to produce any corroborating or physical evidence and the jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. *Lovings v. State*, 376 S.W.3d 328, 336 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)); *Benton v. State*, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref'd). We liberally construe testimony given by a child victim of sexual assault, and as long as the child communicates to the factfinder

---

[2] A child is defined as a person younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 22.011(c)(1).

that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient. *Martines*, 371 S.W.3d at 240.

## C.     Analysis

Bock notes that there were inconsistencies between E.C.'s statement at the Child Advocacy Center and her testimony at trial and argues that this is evidence E.C.'s testimony was not credible and created reasonable doubt as to his guilt.  He also points this court to E.C.'s use of drugs and alcohol and to the fact that E.C. admitted during her testimony that she continued to go over to Bock's house, even though he was allegedly assaulting her.  But, these arguments primarily concern E.C.'s credibility as a witness, not the sufficiency of the evidence.  The jury was free to weigh the evidence, and this court will not disturb the jury's credibility determinations on appeal.  *See Shaw v. State*, 329 S.W.3d 645, 657 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Gonzalez*, 337 S.W.3d at 479.

With respect to the first count, E.C. testified that the sexual assault occurred one night in July 2010, when she was fourteen years old.  She testified that Bock got on top of her and started taking off their clothes.  She testified that he then put his penis inside her vagina and began to have sex with her, but eventually stopped after she started crying.  With respect to the second count, E.C. testified that she was lying in bed at Bock's house when he took off her pants, put his head down in her "crotch area," and placed his mouth on her vagina.   This detailed testimony

10

alone was sufficient to support Bock's convictions. *See Shaw*, 329 S.W.3d at 657–58 (holding evidence was legally sufficient to support appellant's conviction for aggravated sexual assault of child based on victim's detailed testimony about how appellant penetrated her sexual organ); *see also Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding evidence sufficient to sustain appellant's conviction for sexual assault, despite lack of physical evidence, where child victim provided ample and detailed testimony to establish that sexual assault occurred). Accordingly, after viewing all the evidence in a light most favorable to the verdict and presuming that the factfinder resolved all conflicts in favor of the verdict, we hold that the evidence was sufficient to support Bock's convictions for sexual assault.

We overrule Bock's first point of error.

## Ineffective Assistance of Counsel

In his second point of error, Bock contends that his counsel was ineffective for failing to: (1) request a limiting instruction on evidence of an extraneous offense; (2) object to the State's introduction of victim impact testimony; (3) request a hearing on the admissibility of an alleged outcry statement; and (4) object to the introduction of inadmissible hearsay from the complaining witness's mother.

## A.  Standard of Review

Both the federal and state constitutions guarantee an accused the right to have the assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West 2005). The right to counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). Both state and federal claims of ineffective assistance of counsel are evaluated under the two prong analysis of *Strickland*. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The first prong requires the appellant to demonstrate that counsel's performance was deficient, meaning that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The second prong requires the appellant to show that counsel's deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* To establish prejudice, the appellant must prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.* Unless an appellant can prove both prongs, an

12

appellate court must not find counsel's representation to be ineffective. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). On direct appeal, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective-assistance claim because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The lack of a clear record usually will prevent the appellant from meeting the first prong of *Strickland*, as the reasonableness of counsel's choices and actions during trial can be proven deficient only through facts that do not normally appear in the appellate record. *Id.* In order for an appellate court to find on direct appeal that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). An appellate court will not speculate about the reasons underlying defense counsel's decisions to find counsel ineffective. *Id.*; *Jackson*, 877 S.W.2d at 771. If appellant does not file a motion

for new trial or request a hearing, or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective assistance claim on direct appeal. *Stults*, 23 S.W.3d at 208–09.

Moreover, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, in order to prevail on an ineffective-assistance claim on direct appeal, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143; *see also Mata*, 226 S.W.3d at 428–29 (recognizing exception to presumption of reasonable professional judgment when complained-of conduct by trial court is of type which no reasonably competent defense attorney would have engaged in for any reason).

## B. Analysis

First, Bock complains that counsel was deficient because he failed to request a limiting instruction during the guilt-innocence phase relating to the extraneous offense that occurred at the Frio River cabin. *See* TEX. R. EVID. 105(a). Bock concedes that this evidence was admissible under Texas Rule of Evidence 404(b),

but contends his counsel should have requested a limiting instruction at the time the jury heard testimony about the offense.

Bock did not file a motion for new trial, and the record is silent as to why defense counsel failed to request a limiting instruction. And, we may not speculate as to the reasons for defense counsel's conduct. *Stults*, 23 S.W.3d at 208; *Lopez*, 343 S.W.3d at 142 (stating that appellate court must not engage in retrospective speculation and deficient performance instead must be affirmatively demonstrated in record). In any event, the record reflects that although defense counsel did not request a contemporaneous limiting instruction, the jury charge included a limiting instruction on the use of extraneous offense evidence. Under these circumstances, we cannot conclude that counsel was ineffective. *See Howland v. State*, 966 S.W.2d 98, 105 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (refusing, on direct appeal, to find defense counsel ineffective where counsel failed to request limiting instructing related to extraneous offense during trial, but limiting instruction was included in jury charge and record was silent as to counsel's reasoning).

Second, Bock contends that his counsel was ineffective for failing to object to the State's introduction of victim impact testimony during the guilt-innocence phase. Specifically, Bock alleges that counsel was deficient for failing to object to E.C.'s mother's testimony that E.C. continued to undergo counseling, maintained

15

poor grades, endured degrading comments from peers, and was afraid to be alone following the assault, and for failing to object to E.C.'s testimony that her social situation was "hurt" after she admitted she had been sexually assaulted by Bock.

In support of his argument that this victim impact testimony was improper, Bock cites *Miller-El v. State*, 782 S.W.2d 892 (Tex. Crim. App. 1990), which states that victim impact testimony does not have "any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial." *Miller-El*, 782 S.W.2d at 895. But *Miller-El* holds that victim impact testimony can be admissible as a "circumstance of the offense." *Miller-El*, 782 S.W.2d at 895. And later cases from the courts of appeals likewise have concluded that victim impact testimony may be admissible during the guilt phase if the testimony "would have a tendency to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant committed the crimes at all." *Longoria v. State*, 148 S.W.3d 657, 660 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Cueva v. State*, 339 S.W.3d 839, 881 (Tex. App.—Corpus Christi 2011, pet. ref'd) (suggesting that if victim-impact testimony was relevant to any guilt issue, it would be admissible at guilt stage of trial); *Warren v. State*, 236 S.W.3d 844, 847 (Tex. App.—Texarkana 2007, no pet.) (explaining that if issue of whether sexual assault actually occurred was contested, then subsequent adverse reaction of victim to occurrence is relevant to show fact of occurrence).

In this case, the testimony regarding the impact the sexual assault had on E.C.'s life was admissible to show that a sexual assault in fact occurred. Accordingly, we cannot say that defense counsel's failure to object to it fell below the objective standard of reasonableness such that no reasonable trial strategy could justify his actions. *See Lopez*, 343 S.W.3d at 143; *see also Cueva*, 339 S.W.3d at 881 (holding that because victim impact testimony had "a tendency to make more or less probable a fact of consequence at the guilt stage" and would have been admissible, trial counsel's failure to object did not fall below objective standard of reasonableness); *Longoria*, 148 S.W.3d at 660 (holding that trial counsel's failure to object to victim impact testimony did not fall below objective standard of reasonableness where that "testimony regarding the girls' behavior and long-term prognosis would have a tendency to make more or less probable a fact of consequence at the guilt stage").

Finally, Bock contends that his counsel was ineffective for failing to object to E.C.'s mother's hearsay statements and for failing to request a hearing under article 38.072 of the Code of Criminal Procedure regarding their admissibility. *See* TEX. CODE CRIM. PRO. ANN. art. 38.072 § 1. However, as the State correctly points out, E.C.'s mother's testimony did not contain hearsay. She described E.C.'s demeanor when E.C. told her about the sexual assaults and then described how she reacted—by taking E.C. to a health care professional and then the Child Advocacy

Center. E.C.'s mother did not relate E.C.'s statements about the sexual assaults, and nothing in the record indicates that the State designated her as the outcry witness. Bock's counsel cannot be found ineffective for failing to object to admissible testimony. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding counsel not ineffective for failing to object to admissible evidence).

We conclude that Bock has neither shown that his trial counsel's actions at trial were "so outrageous that no reasonable competent trial attorney would have done likewise," nor "rebutted the presumption that his trial counsel's actions were part of some sound trial strategy." *See Mata*, 226 S.W.3d at 433. Therefore, we hold that Bock has failed to satisfy the first prong of *Strickland*. Given our holding, we need not address *Strickland*'s second prong.

We overrule Bock's second point of error.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

18