**Affirmed and Memorandum Opinion filed July 27, 2023.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-22-00239-CR

**ANTOINE NEWTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1521520**

## MEMORANDUM OPINION

A jury found appellant Antoine Newton guilty of aggravated sexual assault of a child under seventeen, and the trial court sentenced him to fifty-six years' confinement in the Texas Department of Criminal Justice, Institutional Division. He challenges his conviction in two issues, contending that his trial counsel was ineffective by: (1) failing to object to victim impact testimony during the guilt-innocence phase of trial; and (2) failing to call any witnesses or present any

mitigation evidence during the punishment phase. Because the record does not support appellant's ineffective assistance claims, we overrule his issues.

We affirm the trial court's judgment.

## Background

On April 8, 2006, fourteen-year-old "Jane"[1] was walking home from a friend's house when a car stopped in front of her. Appellant and an unknown male exited the car and approached her. The unknown male hit Jane in the eye with a closed fist. She fell, hit her head on the ground, and "blacked out." She awoke the next morning, naked, in an abandoned apartment. She felt excruciating pain all over, but her face and vagina hurt the most. She put on her clothes, left the apartment, and walked home. Her mother immediately took her to the hospital to undergo a sexual assault exam. The sexual assault nurse collected anal and vaginal swabs from Jane and secured them in a sexual assault kit. However, the investigation into Jane's sexual assault stalled.

In 2016, a new investigator, Detective Emma Rodriguez, took over Jane's case file. Detective Rodriguez developed appellant as a suspect through an "investigative lead." She contacted Jane, who was then twenty-four years old, and arranged for her to come in for an interview. After the interview, during which Jane recounted her recollections of the sexual assault, another officer showed her a photo array. Jane identified appellant as her assailant. Officers obtained a buccal swab from appellant. Appellant's DNA was consistent with the DNA collected from Jane and contained in Jane's sexual assault kit. A grand jury indicted appellant for aggravated sexual assault of a child.

---

[1] We use a pseudonym to protect the minor complainant's identity. *See* Tex. R. App. P. 9.8 cmt.; *see also Pearson v. State*, No. 14-11-00041-CR, 2012 WL 376500, at *1 n.1 (Tex. App.— Houston [14th Dist.] Aug. 7, 2012, pet. ref'd) (mem. op., not designated for publication).

After a two-day trial, a jury convicted appellant of aggravated sexual assault of a child. Appellant elected to have the trial court determine his punishment, and after a hearing during which neither the State nor appellant presented any additional evidence, the trial court sentenced him to fifty-six years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant timely appealed.

## Analysis

### A. Standard of Review

Appellant contends his trial counsel was ineffective. We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense. *Id.* at 691-92. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697.

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g). If counsel's reasons for his or her conduct do not appear in the record and there exists at least the possibility that the conduct could have been

3

grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *See Garza*, 213 S.W.3d at 348. If counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the majority of cases, the record on direct appeal is simply undeveloped and insufficient to permit a reviewing court to fairly evaluate the merits of an ineffective assistance of counsel claim. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Robison*, 461 S.W.3d at 203.

## B.    Victim Impact Testimony During Guilt-Innocence

In his first issue, appellant contends his counsel was ineffective for failing to object to victim impact testimony elicited during the guilt-innocence phase of trial. *E.g.*, *Love v. State*, 199 S.W.3d 447, 456-57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (explaining that victim impact testimony is generally irrelevant at guilt-innocence phase of trial because it does not tend to make the existence of any facts of consequence any more or less probable). We disagree that trial counsel was ineffective for failing to object to the testimony appellant identifies.

Appellant's complaint involves four portions of victim impact testimony during guilt-innocence: (1) the complainant's mother's testimony regarding the effects of the sexual assault on the mother;[2] (2) the mother's testimony regarding her observations of the complainant's behavior after the sexual assault;[3] (3) the

---

[2] The mother testified that it has been difficult to get past the sexual assault of her daughter, although she is now "kind of able to kind of deal with it because certain life things happen."

[3] The mother explained that talking about the sexual assault was very difficult for the complainant, stating that the complainant "wanted to just put it in the back of her brain and just, you know. It was very difficult and sad for her. It was just a difficult thing to relive for her."

4

complainant's testimony regarding the changes in her behavior following the sexual assault;[4] and (4) the complainant's testimony describing why she moved away from the area where the sexual assault occurred.[5]

First, contrary to appellant's assertion, victim impact evidence can be relevant and admissible during the guilt-innocence phase. A complainant's change in behavior is relevant to allegations of sexual assault if either occurrence of the sexual assault or consent are disputed because the change in behavior makes it more probable that the alleged assault took place. *See, e.g.*, *Gonzalez v. State*, 455 S.W.3d 198, 203-04 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (evidence of child's post-traumatic stress disorder was admissible in a case in which the source of the child's trauma—either sexual assault by the defendant or physical abuse by the mother—was disputed); *Yatalese v. State*, 991 S.W.2d 509, 511 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (mother's testimony about her child's transformation from a "normal, regular little girl" to having a "very bad attitude" and "a lot of anger" after the alleged sexual assault was admissible in a case in which the defendant disputed that the assault occurred); *see also Longoria v. State*, 148 S.W.3d 657, 659-60 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (in an aggravated sexual assault case, "testimony regarding the girls' behavior and long-term prognosis would have a tendency to make more or less probable a fact of

---

[4] The complainant described the changes in her behavior immediately after the sexual assault took place: "I got very angry. I got very -- just being honest -- pissed off with a lot of things. I started being a very, very disobedient child. I was mad at everybody. There was a time where they asked if I wanted to talk to somebody and I told them no."

[5] The complainant testified that she left the area after the assault occurred:

After the incident, I didn't want to be anywhere near the area, so my other aunt who is no longer with us, agreed to let me stay with her. . . . I was scared. I was terrified of the area. I didn't feel comfortable at all. I didn't want to go down the street. I didn't want to leave the house. It got to a point where I didn't want to go to school, because I didn't want to have to leave the house.

5

consequence at the guilt stage; that is, whether appellant committed the crimes at all."). Thus, victim impact testimony may be admissible during the guilt-innocence phase if the testimony would tend to make more or less probable a fact of consequence at the guilt stage. *Longoria*, 148 S.W.3d at 660.

The State argues that this testimony was admissible to rebut appellant's defensive theory that no aggravated sexual assault occurred. *E.g.*, *Gonzalez*, 455 S.W.3d at 203; *Cueva v. State*, 339 S.W.3d 873, 880-81 (Tex. App.—Corpus Christi 2011, pet. ref'd) (victim impact testimony admissible during guilt innocence when defendant claimed victim and her mother fabricated the incident); *Yatalese*, 991 S.W.2d at 511. During opening argument, appellant's counsel argued as follows: "There was no aggravated assault. There's no evidence of that. There's a version of events that someone is telling you and we're going to probe that version of events and we're going to test it." Appellant's counsel also suggested that this case bore similarities to the "American Classic, *To Kill a Mockingbird*, by Harper Lee . . . absent the racial undertones. . . ."[6] Appellant's counsel argued that the complainant "may have made some mistakes back then and presented herself to be something that she wasn't quite."

We agree with the State that, to rebut appellant's defensive theory, this testimony may be admissible during the guilt-innocence phase. *Cf. Gonzalez*, 455 S.W.3d at 203; *Longoria*, 148 S.W.3d at 659-60; *Cueva*, 339 S.W.3d at 880-81; *Yatalese*, 991 S.W.2d at 511; *see also Brown v. State*, 692 S.W.2d 146, 150 (Tex. App.—Houston [1st Dist.] 1985, pet. denied) ("[O]ur courts have long recognized that subsequent emotional distress and shock may be properly considered in

---

[6] In that novel, a father beat his daughter when he discovered that she made sexual advances to a black man. The father and daughter, both white, then falsely accused the black man of raping the daughter. *See* HARPER LEE, TO KILL A MOCKINGBIRD (1960), plot summary available at: https://en.wikipedia.org/wiki/To_Kill_a_Mockingbird.

determining whether sexual intercourse occurred as a result of threats or force."). Thus, appellant has not demonstrated that counsel's failure to object fell below objective standards of professional norms. *See Longoria*, 148 S.W.3d at 659-60; *see also Mays v. State*, No. 14-18-00702-CR, 2019 WL 5704292, at *3 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, pet. ref'd) (mem. op., not designated for publication).

Moreover, our record is silent regarding trial counsel's reasoning. Appellant did not file a motion for new trial asserting this complaint, nor did a hearing occur at which counsel was afforded an opportunity to explain the reasoning behind the decision not to object. Our record is thus insufficient to overcome the presumption that counsel's actions were part of a reasonable strategic plan. *See Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000) (no ineffective assistance on direct appeal when counsel failed to object to improper victim impact testimony when record was silent concerning counsel's motivations); *see also Mays*, 2019 WL 5704292, at *3 (same); *Brown v. State*, No. 14-15-00795-CR, 2017 WL 225 8251, at *13 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet.) (mem. op., not designated for publication) (same); *Montez v. State*, No. 14-05-00182-CR, 2006 WL 916437, at *6-7 (Tex. App.—Houston [14th Dist.] Apr. 6, 2006, pet. ref'd) (mem. op., not designated for publication) (same).

In sum, appellant has not demonstrated that his counsel's failure to object to the identified testimony amounted to ineffective assistance of counsel. We overrule his first issue.

## C. Failure to Offer Mitigating Evidence During Punishment

In his second issue, appellant contends that his trial counsel was ineffective for failing to present any mitigating evidence or witnesses during the punishment phase. When the claim of ineffective assistance is based on counsel's failure to call

a witness, the appellant must show that (1) such witnesses were available to testify, and (2) appellant would have benefitted from their testimony. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).

Appellant has not identified any mitigating evidence that his trial counsel should have presented or any witnesses that would have been available to testify. Appellant has not met the first element and therefore cannot meet the second. Instead, appellant points to the following argument his trial counsel made at the punishment hearing: "I will say in his defense he has children. He has two girls and a boy. Their mother has recently passed away tragically, unexpectedly." Appellant contends that this argument shows that trial counsel was ineffective because he "was obviously aware of the presence of the children and the passing of his children's mother . . . [but] he called no witnesses to expand on the fatherly relationship, the passing of the children's mother, and what he has done to be there for his children to handle and deal with naturally difficult emotions associated with the passing of their mother."

Merely suggesting that there may have been mitigating evidence is not sufficient. Without establishing the existence of any favorable evidence that available witnesses would have provided, appellant cannot demonstrate ineffective assistance based on a failure to present mitigating evidence. *See Bone*, 77 S.W.3d at 834-35 (trial counsel was not ineffective for failing to produce more mitigating evidence when the record did not show that other mitigating evidence existed); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (when appellant did not explain what mitigating evidence trial counsel should have proffered, court "cannot possibly find that a failure to proffer such evidence constituted ineffective assistance"); *Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("A defendant complaining about trial counsel's failure to

8

call witnesses must show the witnesses were available and that he would have benefitted from their testimony." (quotation omitted)); *see also Silva v. State*, No. 14-19-00720-CR, 2021 WL 970560, at *4-5 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op., not designated for publication) ("Here, the record does not show that Villarreal was available to testify at Appellant's punishment hearing. The record is also silent as to counsel's reasons for failing to call Villarreal at the punishment hearing. Therefore, Appellant's argument fails to rebut the strong presumption in favor of effectiveness of counsel.").

Appellant compares this case to *Milburn v. State*, 15 S.W.3d 267 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In *Milburn*, the defendant presented evidence at a hearing on a motion for new trial. *See id.* at 269. The parties stipulated that twenty of the defendant's relatives and friends would have testified that they had known the defendant for a long time and that the jury should have considered the minimum punishment. *See id.* The witnesses would have testified at trial if they had been requested to do so, but trial counsel never contacted them. *See id. Milburn* is clearly distinguishable. Appellant did not file a motion for new trial, and the record does not reveal the existence of any available witnesses or the nature of any mitigating evidence.

In sum, appellant has not demonstrated that any mitigating, favorable evidence existed or that any witnesses ready and willing to provide mitigating testimony were available. Thus, we conclude appellant has not rebutted the strong presumption that his counsel was effective. We overrule appellant's second issue.

**Conclusion**

We affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Jewell, Hassan, and Wilson.

Do not publish.  Tex. R. App. P. 47.2(b).